UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| COACH, INC. and </br> COACH SERVICES, INC. </br></br> Plaintiffs, </br></br> v. </br></br> TOM'S TREASURE CHEST </br></br> Defendant. | ) </br> ) </br> ) </br> ) </br> ) </br> )    CAUSE NO. 2:10-cv-00243 </br> ) </br> ) </br> ) </br> ) |

## OPINION AND ORDER

This matter is before the Court on Plaintiffs Coach, Inc. and Coach Services, Inc.'s (referred to together as "Coach") Motion for Entry of Default. [DE 11.] Because the Clerk has already entered default in this case, I read this as a motion for default judgment. For the following reasons, the motion is **GRANTED**.

## BACKGROUND

First, the facts as they're alleged in the Complaint. Coach engages in the manufacture, marketing, and sale of high end handbags, wallets, accessories, and jewelry throughout the United States. [DE 1 ¶ 10.] The brand name Coach is widely recognized and the products are popular, with sales exceeding three billion dollars per year. [*Id*. ¶ 12.] Coach holds numerous legally-protected trademarks, trade dresses, and design elements/copyrights and has expended substantial resources advertising and promoting these marks. [*Id*. ¶¶ 10-12.] Defendant Tom's Treasure Chest is a retail store located in Gary, Indiana. [*Id*. ¶ 6].

On May 12, 2010, an investigator hired by Coach purchased two handbags from Tom's Treasure Chest labeled as "Coach" bags, despite the fact that Coach never manufactured, sold, or

1

offered this style of handbag. [*Id.* ¶ 27.] The investigator observed additional Coach knock-offs at the store, and store personnel stated that similar items were received on a regular basis. [*Id.*] Tom's Treasure Chest is not an authorized retailer of the Coach brand nor has license, authority, or permission to utilize any of the Coach trademarks, trade dresses, or design elements. [*Id.* ¶¶ 27, 29.] The two handbags contained six Coach trademarks. [DE 12 at 13.]

On June 17, 2010, Coach brought this action alleging trademark and trade dress infringement and counterfeiting under the Lanham Act; copyright infringement under the Copyright Act; trademark infringement and unfair competition under Indiana law; and state claims of forgery and counterfeiting. [DE 1 ¶ 1.] According to an affidavit filed by Coach's process server, Coach served the summons and complaint on Tom's Treasure Chest's registered agent on September 20, 2010.[1] [DE 6.] But Tom's Treasure Chest has not filed a response to the complaint, and the Clerk entered default on January 19, 2011. [DE 10.] As a result, Coach filed this motion for default judgment, [DE 11], and Tom's Treasure Chest has not responded to the motion. Coach seeks $600,000 in statutory damages for six infringed marks under the Lanham Act, $1,097.50 in attorney's fees, $744.53 in investigation fees, and $590.00 in costs. [DE 12.]

## DISCUSSION

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. Fed. R. Civ. P. 55. Prior to obtaining a default judgment under Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a). *See Wolf Lake Terminals, Inc. v. Mut. Marine Ins. Co.*, 433 F. Supp. 2d 933, 941 (N.D. Ind. 2005). Under Rule 55(a), the clerk is to enter the

---

[1] On August 4, 2011, I ordered Coach to demonstrate that Tom's Treasure Chest was properly served under Fed. R. Civ. P. 4(h). I am satisfied by Coach's response.

default of a party against whom a judgment is sought when that party has failed to plead or otherwise defend.  Fed. R. Civ. P. 55(a).  Because the clerk has already entered default against Tom's Treasure Chest, I may now enter a default judgment under Rule 55(b)(2).

Courts may consider a number of factors when deciding a motion for default judgment. Those factors include the amount of money potentially involved, whether material issues of fact or issues of substantial public importance are present, whether the default is largely technical, whether plaintiff has been substantially prejudiced by the delay involved, and whether the grounds for default are clearly established or are in doubt.  10A Wright *et al.*, Fed. Prac. & Proc. Civ. 3d § 2685 (3d ed. 2007); *see Cameron v. Myers*, 569 F. Supp. 2d 762, 764 (N.D. Ind. 2008).

In this case, the grounds for default are clearly established.  This case has been pending since June 2010, yet Tom's Treasure Chest has shown no intention to respond to the complaint in the several months since it was served.  The default is thus not a simple technicality.  And no material issues of fact have been presented due to Tom's Treasure Chest's failure to participate in the lawsuit.  Further, it's in the public's interest to protect intellectual property from trademark infringement.

A default judgment establishes, as a matter of law, that a defendant is liable to the plaintiff for each cause of action in the complaint.  *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1404 (7th Cir. 1993).  When a court determines that a defendant is in default, all well-pleaded allegations in the complaint will be taken as true.  *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).  Here, this means that I must accept as true Coach's assertions that Tom's Treasure Chest willfully infringed Coach trademarks by selling knock-off handbags containing Coach marks.

Yet while the factual allegations relating to liability are taken as true, the amount of damages must be proved. *Dundee Cement Co. v. Howard Pipe & Concrete Prods. Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). This often means that the court must hold a hearing or conduct an investigation to determine the amount of damages. But no such inquiry is necessary if "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Id*.; *see also Pope v. United States*, 323 U.S. 1, 12 (1994). Moreover, an evidentiary hearing is often unnecessary where a party seeks statutory damages. *See Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc*., 2008 WL 1775512, at *3 (N.D. Ill. April 17, 2008) (citing *Ortiz-Gonzalez v. Fonovisa,* 277 F.3d 59, 63-64 (1st Cir. 2002)).

Here, Coach seeks statutory damages under the Lanham Act, 15 U.S.C. § 1117. If a plaintiff elects statutory damages for a willful violation under § 1117(c), he may receive damages ranging from $1,000 to $2,000,000 per counterfeit mark per type of goods or services sold. 15 U.SC. § 1117(c). In determining damages within this range, courts are not required to follow a rigid formula and, in fact, enjoy "wide discretion in awarding statutory damages." *Brown v. Walker*, 2010 WL 2346242, at *7 (N.D. Ind. May 25, 2010) (citing *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991)). Some courts look to case law addressing analogous statutory language in the Copyright Act for guidance and consider factors such as the difficulty of proving actual damages, the circumstances of the infringement, the efficacy of the damages as a deterrent, and whether the infringement was willful. *Id*.

Courts agree, however, that statutory damages must both "bear some relation" to actual damages and serve to deter future violations. *Bly v. Banbury Books, Inc.,* 638 F.Supp. 983, 987 (E.D. Pa. 1986); *Square D Co. v. Breakers Unlimited, Inc*., 2010 WL 381334, at *4 (S.D. Ind.

4

Jan. 25, 2010). As a result, courts often look to the size and scope of the defendant's operation to determine an appropriate baseline for damages. *See Chanel v. Banks*, 2011 WL 121700, at *11 (D.Md. Jan. 13, 2011) ("[T]he broader measure of damages available [under § 1117(c)] is intended to address situations involving sophisticated, large-scale counterfeiters"); *Coach Inc. v. Diva Shoes & Assessories*, 2011 WL 1483436, at *7 (N.D. Cal. Apr. 19, 2011) (rejecting Coach's damages award where there was "no evidence that Defendants were importing large, commercial quantities of counterfeit Coach merchandise"). Courts also award high damages where a defendant's counterfeiting activities attract wide market exposure through Internet traffic or advertisement. C*ompare Coach, Inc. v. Ocean Point Gifts*, 2010 WL 2521444, at *6 (D.N.J. June 14, 2010) (finding high damage awards in counterfeit cases were "due in part to the wide market exposure that the Internet can provide") *with Burberry LTD & Burberry USA v. Designers Imports, Inc.*, 2010 WL 199906, at *10-11 (S.D.N.Y. Jan. 19, 2010) (awarding $100,000 per infringed mark, in part, "because of Defendant's ability to reach a vast customer base through internet advertising").

In this case, Coach seeks $100,000 for each of the six infringed trademarks, which would equal a statutory award totaling $600,000. Coach argues that this award is appropriate because Tom's Treasure Chest willfully sought to benefit from Coach's reputation, and the total is modest in comparison to the statutory maximum of $12,000,000. It also cites to cases in which district courts have awarded similar damages in trademark counterfeiting cases involving comparable luxury goods.

I find the $100,000 baseline excessive. First, Coach has provided no evidence demonstrating actual damages or the scope of Tom's Treasure Chest's counterfeiting activities. All I know is that an investigator hired by Coach purchased two counterfeit handbags from

Tom's Treasure Chest, and "[t]here were additional Coach-labeled Infringing Products offered for sale at the store in question." [DE 1 ¶ 27.] Also, store personnel stated that the store received similar items on a regular basis. [*Id*.] But this does not tell me the size and scope of the operation or the value of the inventory on the day the investigator visited the store. In fact, Coach has provided little factual basis for the amount of damages it requests. *See Coach, Inc. v. Linda's Accesorios Y Cellulares*, 2011 WL 2601525, at *1 (N.D. Tex. June 30, 2011) ("Had this been an instance in which Plaintiffs conducted an extensive investigation that established the duration, frequency, and quantity of items infringed over a period of time, the court might be more willing to award [$100,000 per mark] in damages."); *Ocean Point*, 2010 WL 2521444, at *7-8 (awarding $10,000 per mark where investigator visited retail shop on multiple occasions and provided evidence of the defendant's inventory of counterfeit goods).

Indeed, it appears that Tom's Treasure Chest was not a large scale operation with wide market exposure for its counterfeiting activities, but rather a single retail storefront selling goods to walk-up customers. And, unlike the majority of cases cited by Coach, Tom's Treasure Chest did not sell or advertise its illegal wares on the Internet. So actual damages were probably modest. *See Coach Services, Inc. v. K Ya Intern., Inc.*, 2010 WL 2771897, at *3 (S.D.N.Y. Jun. 10, 2010) (awarding Coach $6,667 per infringement where operation was small retail shop). This is especially true since Tom's Treasure Chest is located in a section of Gary, Indiana that is widely known as one of the most economically depressed areas in the country.[2] What's more, it is unlikely Coach lost any revenues as a result of Tom's Treasure Chest's infringing activities.

---

[2] I take judicial notice of this fact. *See* Fed. R. Evid. 201(b) (a court may take judicial notice of a fact that is "not subject to reasonable dispute" and "generally known within the territorial jurisdiction of the trial court").

*See Diva Shoes & Assessories*, 2011 WL 1483436, at *8 ("Given that the counterfeit bags sold by Defendants are significantly less expensive than authentic Coach merchandise, the shoppers who buy from Defendants are arguably not likely to purchase authentic Coach products.").

In sum: Coach has not demonstrated that Tom's Treasure Chest was operating a large scale counterfeiting operation or that Coach suffered significant damages as a result of the defendant's activities. In fact, the evidence suggests otherwise. As a result, I find that a $5,000 baseline is warranted, for a total damages award of $30,000. *See Linda's Accessorios*, 2011 WL 2601525, at *1 (awarding Coach $5,000 per mark rather than $100,000 where investigator visited store on one occasion and presented little evidence of the scope of counterfeiting activities). This number takes into account the value of Coach's trademarks, the defendant's willfullness, and will deter Tom's Treasure Chest and others from similar violations.

Coach also seeks its attorneys' fees and costs. The Lanham Act permits a prevailing party to recover the costs of an action and, in "exceptional cases," reasonable attorney fees. 15 U.S.C. § 1117(a)). "'Exceptional cases' include those where the infringement is 'malicious, fraudulent, deliberate, or willful.'" *Brown*, 2010 WL 2346242, at *9 (quoting *BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1099 (7th Cir. 1994)).

Here, based on the uncontested allegations of Tom's Treasure Chest's willfulness, this is an "exceptional case" in which reasonable attorney fees should be awarded. And Coach submits an affidavit from its attorney containing a sufficiently itemized statement of the time spent on each task for which Coach seeks fees, along with the rate charged for each task. Coach also includes proof of filing and service fees and investigative costs. [DE 12-1; 12-2.]; *see Ocean Point*, 2010 WL 2521444, at *8 ("Attorneys fees can include fees for investigators working under the direction of an attorney."). I find these claims reasonable.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Entry of Default is **GRANTED**. [DE 11.] Tom's Treasure Chest is **ORDERED** to pay Coach $30,000 in statutory damages, $1,097.50 for reasonable attorneys' fees, $744.53 for investigative costs, $350.00 in courts costs, and $240.00 in service fees. The Clerk is directed to treat this matter as **TERMINATED**.

**SO ORDERED.**

ENTERED: September 21, 2011.

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
